IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. )<br>CARL MOSBY, )<br>)<br>              Petitioner, )<br>   v. )<br>)<br>ALEX DAWSON, Warden, )<br>Logan Correctional Center,[1] )<br>)<br>              Respondent. ) | No. 09 C 1499<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Petitioner Carl Mosby, an inmate incarcerated at the Logan Correctional Center, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C.§ 2254, claiming ineffective assistance of counsel. For the following reasons, the petition is denied.

## BACKGROUND

The evidence presented at trial showed that, on the evening of July 16, 1994, petitioner was loitering on a Chicago street corner with about ten other people. At around 10:15 p.m., a car carrying four young men approached the corner and turned left. Some of the men in petitioner's group flashed gang signs, and one of the men shouted, "there them n*****s go right there." Petitioner stepped into the middle of the street, gun in hand, and fired multiple rounds at the car, shattering its rear window and shooting one of its passengers, who died later at a hospital.

Three eyewitnesses, all residents of third-floor apartments overlooking an alley near the corner where the shooting had occurred, testified at trial. Maria Diaz testified that, just before

---

[1] Alex Dawson has replaced Austin Randolph as the warden at Logan Correctional Center, and is thus the proper respondent. See Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. Dawson is hereby substituted as respondent.

the shooting, she heard yelling on the street below her open bedroom window. She looked out on the street below, which was illuminated by two streetlights, and saw petitioner standing in the middle of the street firing a shot at the victim's car. Maria told her mother, Florence, what she had seen, and as another shot rang out, the two of them looked out the window and observed petitioner and another man, Martin Donaldson, walking toward an alley, which was also illuminated by a streetlight. Maria recognized both men, whom she had frequently seen in or near her apartment building. She later identified petitioner and Donaldson in separate police lineups.

John Toro, the third eyewitness, testified that after hearing gunshots, he went to his window (which overlooked the alley) and saw petitioner, shirtless, walking briskly into the alley with Donaldson. He heard petitioner tell Donaldson, "nobody f***s with me." Petitioner then stopped walking and handed Donaldson a gun wrapped in a t-shirt. Toro stated that before the shooting, he had seen petitioner around the neighborhood, often in that alley. Toro later identified petitioner and Donaldson in separate police lineups.

After a jury trial in the Circuit Court of Cook County, Illinois, during which petitioner was represented by Assistant Public Defender Anthony Eben, petitioner was convicted of first degree murder and sentenced to 50 years' imprisonment. People v. Mosby, No. 94 CR 20210-1.

Petitioner appealed, and the Illinois Appellate Court affirmed his conviction. People v. Mosby, No. 1-97-4545 (Ill. App. Ct. May 7, 1999) (unpublished order pursuant to Illinois Supreme Court Rule 23). Petitioner filed a petition for leave to appeal ("PLA"), which the Illinois Supreme Court summarily denied. People v. Mosby, No. 87792 (Ill. Oct. 6, 1999).

On March 21, 2000, petitioner filed a pro se postconviction petition pursuant to 725 ILCS 5/122-1 et seq., arguing (among other things) that trial counsel was ineffective for failing to investigate and present an alibi defense based on the accounts of three witnesses petitioner had suggested to him. Citing petitioner's failure to raise the claim on direct appeal, the postconviction trial court dismissed the PLA.

The Illinois Appellate Court reversed and remanded for an evidentiary hearing on the issue of trial counsel's alleged ineffective assistance. People v. Mosby, No. 1-00-2472 (Ill. App. Ct. 2001) (unpublished order pursuant to Illinois Supreme Court Rule 23). On November 6, 2003, petitioner filed a counseled amended postconviction petition. That petition reiterated petitioner's argument that trial counsel was ineffective for failing to investigate petitioner's alibi defense, and introduced a new ineffective assistance theory based on counsel's failure to present evidence that petitioner, a member of the Gangster Disciples street gang, had been framed by members of the rival Black P Stones gang (including Martin Donaldson) for the murder, which petitioner alleged was actually committed by Kurt McKinzey ("the McKinzey theory").

On February 28, 2005, the postconviction trial court held an evidentiary hearing, at which petitioner called two witnesses: his mother, Carol Tinsley, and his trial cousel. Tinsley testified that she had told petitioner's trial counsel about a rumor that McKinzey, who allegedly resembled petitioner, actually committed the offense. On cross-examination, she further testified that petitioner's trial counsel told her he believed McKinzey committed the offense. Petitioner's trial counsel testified that he could not recall making such a statement, nor could he recall whether he and petitioner had ever discussed the McKinzey theory. His testimony also established that he made reasoned, strategic decisions to pursue a trial strategy of casting

3

reasonable doubt on the state's evidence, and that his work on petitioner's case was diligent and active, both before and during the trial.

The postconviction trial court determined that counsel was not ineffective and denied the petition on March 9, 2005. The court found that trial counsel's strategy was reasonable and that, because no evidence presented showed that McKinzey was the actual shooter, there was no reasonable probability that if counsel had pursued that theory, he would have discovered exonerating evidence.

Petitioner appealed, and the Illinois Appellate Court affirmed. People v. Mosby, No. 1-05-0909 (Ill. App. Ct. Nov. 21, 2007). In so doing, the Appellate Court explained that petitioner had failed to overcome the Strickland presumption that his trial counsel's reasonable doubt defense was a reasonable trial strategy. Petitioner filed a PLA, which the Illinois Supreme Court denied. People v. Mosby, No. 106115 (Ill. May 29, 2008).

On March 9, 2009, petitioner filed the instant petition for a writ of habeas corpus. Petitioner raises only one claim: that trial counsel was ineffective for failing to investigate the theory that petitioner was framed by members of a rival gang for a murder actually committed by Kurt McKinzey.

## DISCUSSION

**I.   Legal Standards**

The Antiterrorism and Effective Death Penalty Act of 1966 ("AEDPA"), 28 U.S.C. § 2254, governs the court's review of petitioner's habeas claim. Habeas relief may be granted only when the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The principles outlined in Strickland v. Washington, 466 U.S. 668 (1983), guide the court's review of claims of ineffective assistance of counsel. To prevail on an ineffective assistance claim, a petitioner must show both that counsel's performance was deficient and that counsel's deficient performance "prejudiced [the petitioner's] defense" by demonstrating a reasonable likelihood that, but for counsel's errors, the trial's outcome would have been different. Id. at 687, 694. To show that counsel's performance was deficient, the petitioner must demonstrate that the representation "fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." Id. at 690. "If a [petitioner] is unable to make a sufficient showing on either component of the Strickland standard, [the court] need not consider the other component." Pole, 570 F.3d at 934; see also Strickland, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by [the petitioner].").

## II. Petitioner's Ineffective Assistance Claim

When, as in the instant petition, a habeas petitioner advances an ineffective assistance claim that a state court has already decided on the merits, he is faced with "doubly deferential judicial review." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). The court can grant his petition only if he both satisfies Strickland's test for ineffective assistance and shows that the state court applied Strickland unreasonably in deciding petitioner's ineffective assistance claim, or made an unreasonable factual determination. Because petitioner cannot establish ineffective

assistance under Strickland, nor can he establish that the Illinois Appellate Court made an unreasonable factual determination or applied Strickland unreasonably, this court denies his petition.

**A.    28 U.S.C. § 2254(d)**

Petitioner cannot, as the AEDPA requires, establish that the Illinois Appellate Court's decision was "contrary to" or "based on an unreasonable application of" Strickland, 28 U.S.C. § 2254(d)(1), or that it made an unreasonable factual determination, 28 U.S.C. § 2254(d)(2).

First, the Appellate Court's decision was not "contrary to" Strickland. When the court has correctly recited the Strickland test and petitioner cannot identify a conflicting Supreme Court case that is factually indistinguishable from his own, its decision regarding ineffective assistance is not "contrary to" federal law. Conner v. McBride, 375 F.3d 643, 657 (7th Cir. 2004). Here, the Appellate Court correctly cited the Strickland test, and petitioner has not identified a factually indistinguishable conflicting Supreme Court case. The Appellate Court used the Strickland framework in explaining that counsel's decision was strategic and "objectively reasonable," and that no prejudice resulted because no evidence substantiated the McKinzey theory.

Neither can petitioner show that the Illinois Appellate Court's application of Strickland was unreasonable. The Appellate Court carefully considered the issue and, based on the evidence that counsel actively prepared for trial, reasonably chose a trial strategy and participated vigorously in the trial, found that petitioner's trial counsel was not ineffective. Again, given the complete lack of admissible evidence supporting the McKinzey theory, the

court did not unreasonably determine that petitioner was not prejudiced by his counsel's failure to pursue it.

Finally, petitioner claims that the Illinois Appellate Court made an unreasonable factual determination when it found that trial counsel's decision not to pursue the McKinzey theory was reasonable. That court explained that because pursuing the McKinzey theory would have required exposing petitioner's gang affiliation to the jury, it could have ultimately had a detrimental effect on petitioner's case. Petitioner argues that the state court's determination was unreasonable under Strickland's requirement that counsel "make reasonable investigation" or "make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 690 (1984). To support that position, petitioner cites trial counsel's testimony at the postconviction evidentiary hearing that he could not recall why he had not investigated the McKinzey theory, and had not considered that defense "with regard to how to try the case."

This testimony, however, does not help petitioner to overcome the court's "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. Here, the Appellate Court was presented with evidence that trial counsel had provided competent legal assistance in preparing for trial, by holding meetings with petitioner, conducting investigation, interviewing potential witnesses, filing pretrial motions, and making a tactical decision to avoid emphasizing petitioner's gang affiliation. The Appellate Court also reviewed evidence that

counsel worked diligently and actively at trial, conducting, as the trial court noted, "vigorous cross-examinations." The court's determination that trial counsel's decision was reasonable was therefore not itself an unreasonable factual determination.

B.      **Ineffective Assistance**

For the same reasons that petitioner cannot establish that the Appellate Court's decision meets the AEDPA standard, petitioner cannot meet the Strickland requirement that he show counsel's performance was objectively unreasonable.

In addition, because petitioner cannot establish "a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different," he also fails to establish the requisite prejudice. Strickland, 466 U.S. at 694. When, as here, an ineffective assistance claim rests on an alleged failure to investigate, "[t]he focus of the inquiry into prejudice must be on what information would have been obtained from such an investigation and whether such information would have produced a different result." Cross v. O'Leary, 896 F.2d 1099, 1100 (7th Cir. 1990) (internal quotations omitted). Petitioner cannot simply rely on "speculation about what unidentified persons might have said" to establish prejudice. Id.

Petitioner could have supplied the postconviction trial court with evidence at the evidentiary hearing, but the only "evidence" he presented was his mother's inadmissible hearsay testimony regarding a neighborhood rumor that McKinzey had committed the offense. Petitioner has provided no indication that trial counsel's investigation of the McKinzey theory would have led to any admissible evidence. Especially in light of the prosecution's evidence at trial—three eyewitnesses, all of whom observed petitioner on the night of the shooting and later identified him, and one of whom saw him fire the murder weapon—petitioner has not established that the

8

trial's outcome would have been different had counsel pursued a theory that petitioner was framed.

## **CONCLUSION**

For the reasons discussed above, the petition for a writ of habeas corpus is denied.


**ENTER:**     November 15, 2010

                                                  **Robert W. Gettleman**
                                                  **United States District Judge**